## SUPREME COURT.

### IN THE MATTER OF THE ATTACHMENT agt. EDWARD BON-NAFFE and AUGUST BONNAFFE.

The *Code de Commerce* in France, relating to bankruptcy, does not make the *concordat* (an agreement between the creditors and the insolvent) equivalent to a *discharge* under the English bankrupt law, unless the prescribed number of creditors decide in favor of an *absolute discharge*, and the court sanction it.

Although in the proceedings before the French tribunal, instituted by the creditors of the insolvents (residents of France), the court confirmed the composition to which they had agreed, declaring it obligatory on all, yet, where it appeared that the condition was "that the firm (insolvents) should be entirely acquitted and discharged toward them (the creditors) *by making surrender of their assets*, as well in the states of America, and particularly in the United States of America, and in Mississippi, as in continental France and its colonies, &c," which was accepted by the required majority of creditors, and the agreement in conformity with it was drawn up by the judges and duly entered.

*Held*—that at this time the assets of the insolvents in New-York, of the value of over $100,000, being seized, and in the possession of trustees under an attachment issued many months before, the condition of the composition could not be fulfilled by the insolvents, as they could not surrender to the assignees in France all their assets in the United States of America.

The French creditors, therefore, were not precluded (the composition not being a final discharge) from enforcing payment for the remainder of the claims due to them; and had a right, as creditors *pro tanto*, to participate; with the American creditors who had merely received dividends from the assignees in France, in the proceeds of the attachment in New-York.

*New-York Special Term, June,* 1859.

CLERKE, Justice. On the 10th December, 1847, an attach-ment, pursuant to article 1, title 1, chapter 5, part 2 of the Revised Statutes, was issued against the estate of Edward Bonnaffe and August Bonnaffe, non-resident debtors. On the 6th of October, 1848, three trustees were appointed, one of whom afterwards died, and another was removed; and two others were substituted in their place. After the appointment of trustees, the officer who had issued the attachment made a report to this court of all the proceedings before him, and filed

it with the clerk in this county.  On the 20th of October, 1848, the notice required by law, requiring the creditors to deliver their respective accounts and demands, was duly published on or before the 1st of December, 1848.  A general meeting of all the creditors was called and held, at which the several classes of creditors were represented, and a hearing was had before the trustees.

At the time of issuing the attachment, the absent debtors, Edward and August Bonnaffe, were residents of Havre in France, transacting business there, under the style of Bonnaffe & Co.  Having become unable to meet their obligations, and being in a state of failure, the president and judges of the Tribunal of Commerce of Havre, on or about the 11th of December, 1847, appointed, pursuant to the *Code de Commerce*, syndics or assignees of their estate; and afterwards such proceedings were had, that a *concordat* (an agreement between the creditors and insolvents) was duly granted to the insolvents, and after having been assented to by more than three-fourths of the creditors in number and amount, was on the 23d day of May, 1848, confirmed and ratified by the Tribunal of Commerce, and was declared obligatory upon all creditors, who had or who had not signed it; upon those whose claims had been proved, as well as upon those whose claims had not been proved, and upon those whose claims had been registered in the statement, as well as upon those whose claims had not been registered.  In the proceedings before the trustees, under the attachment issued here, an exemplified copy of the *concordat* and the proceedings connected with it, and a printed copy of the French Code, were admitted in evidence by them.

I agree with Judge JOHNSON, in his opinion in the case of *Coates* and *Hillard*, that all creditors, whether resident or not, are entitled to dividends under attachments against non-resident debtors; and, as he has dealt with this point at some length, it is unnecessary to discuss it here.  I am fully satisfied with his conclusions, and the reasoning by which he has arrived at them.  The only questions to be considered here, therefore, are, whether the *concordat* and the judgment of the

In the Matter of E. & A. Bonnaffe.

Tribunal of Commerce in Havre have operated to such an extent and in such a manner as to deprive the French creditors and the American creditors, who have received dividends under the *concordat*, of the right to participate in the proceeds of the estate, ready for distribution by the trustees under the attachment, issued in New-York?

The effect of a discharge under the English bankrupt act undoubtedly is, to release the bankrupt from all debts contracted in England, which he owed to English creditors at its date, or at the date of the *fiat* in bankruptcy. This principle is, as we all know, well settled in this state. The case to which I have already referred plainly establishes it. And although if the bankrupt does not avail himself by plea of the discharge, at the suit of a creditor, judgment will be recovered against him—he cannot waive his discharge so as to affect other persons, when he is not interested in the result.

If, therefore, the provisions of the Code de Commerce in France, relating to bankruptcy, make the *concordat* and the judgment of the Tribunal of Commerce in relation to it equivalent to a discharge under the English bankrupt law, the decision of the trustees must be deemed erroneous.

The provisions of this Code, as far as they affect the case before us, do not invest the tribunal with the power absolutely and unqualifiedly to discharge the bankrupt from his debts. They only authorize it, even in compulsory proceedings, to sanction the *concordat* or agreement, whatever it may be, between him and his creditors; the French law not allowing private compositions between creditors as among us, but requiring, in order to make them valid, that they should be originated and executed under the direction and subject to the approval of the appropriate tribunal. This is in accordance with the genius of all the political institutions of France. The government intermeddles with everything, and leaves little to the adjustment of individual motives.

If the prescribed number of the creditors decide in favor of an *absolute discharge*, and the court sanction it, I presume the bankrupt is discharged from all future liabilities; and the re-

sult is similar to that of a discharge under the English bankrupt act. In the proceedings before the French tribunal, instituted by the creditors of Bonnaffe & Co., we see, indeed, the confirmation by the court of the composition to which they had agreed, declaring it obligatory on all. But I cannot regard this composition as an absolute discharge. A. Bonnaffe, who was authorized to act for the house on this occasion, proposed to the creditors, assembled at the meeting required by the Code, "that the firm should be entirely acquitted and discharged toward them *by making surrender of their assets*, as well in the states of America, and particularly in the United States of America (*and in Mississippi*, it is added), as in Continental France and its colonies," &c. This was accepted by the required majority, an agreement in conformity with it was drawn up by the judges, and was duly entered on the 2d of June, 1848. At this very time, however, all their assets in New-York, of the value of more than one hundred thousand dollars, were seized, and in possession of trustees, under the above-mentioned attachment, issued many months before.

So that an important condition of the composition could not be fulfilled. Bonnaffe & Co. could not surrender to the assignees in France all their assets in the United States of America. It matters not whether the bankrupts knew of this attachment; they were unable, in consequence of it, to do what they had stipulated to do. They were utterly incapable of performing a main condition of their discharge. The French creditors, therefore, in my opinion, are not precluded from enforcing payment for the remainder of the claims due to them. They remain *pro tanto* creditors, and as such have a right to participate in the proceeds of the attachment in New-York. If the French creditors, who had signed the composition, have this right, the American creditors, who have merely received dividends from the assignees in France, have, at least, as good a right.

I think the *concordat*, with the appropriate proceedings, was properly proved. It was offered as a foreign judicial record, signed by the clerk of the tribunal, whose signature is authen-

In the Matter of E. & A. Bonnaffe.

ticated by its presiding judge, whose official identity is attested by the United States consul at Havre. The signature of the clerk is not accompanied by a seal, but I presume it was shown that the court has no seal; in fact it has none.

The French Code was proved substantially in conformity with section 426 of the Code. At all events, even if the trustees erred in their ruling on these points, having arrived at a decision in opposition to those who have urged an absolute discharge of the bankrupts as against the French creditors, the error would not be of sufficient importance to require that the decision should be set aside on this ground.

As to the objection that the decision of the trustees should be brought before the court by *certiorari*, the statute expressly declares, that after the officer who issued the warrant shall make his report, the supreme court shall have jurisdiction over the proceedings (3 *R. S.*, 5*th ed.*, 89, § 71), and by section 73, the court may proceed to do such acts and things as remain to be done to complete the proceedings. The distribution of the proceeds by the trustees is a ministerial not a judicial act. To be sure, the manner of the distribution depends on legal principles; but, in determining these principles, the court is supposed to propound them, and can interfere in each case, to *direct* the trustees either before or after any formal decision on their part. It is not by way of review, but by way of direction or command, that the court interferes in such cases.

My conclusion is, that the distribution must be made in conformity with the views intimated by the trustees.